### LLOYD v McDIARMID et

Ohio Common Pleas, Hamilton Co

Decided Aug 5, 1937

Francis A. Hoover, Cincinnati, and Bert H. Long, Cincinnati, for plaintiff.

Stephens, Lincoln & Stephens, Cincinnati, for Atlas National Bank, trustee.

Gatch, McLaughlin & Gatch, Cincinnati, for defendant, Penick.

George E. Mills, Cincinnati, and Peck, Shaffer & Williams, Cincinnati, for two of three Lloyd heirs.

Peck, Shaffer & Williams, Cincinnati, for Lloyd Trustees.

### OPINION

By ALFRED MACK, J.

Prof. John Uri Lloyd prior to June 9, 1933, transferred and delivered to Atlas National Bank as trustee certificates for 2800 shares of the capital stock of the Lloyd Bros. Pharmacists, Inc.

On said day there was executed a trust agreement with relation to said shares of stock, the provisions of which bearing upon instant case, and omitting usual provisions of trust agreements as to non-liability of trustee for acts done in good faith, etc., are as follows:

"Upon the death of said John Uri Lloyd and until said stock shall have been sold the right to vote said stock shall vest in John T. Rouse, William J. Miller and C. J. McDiarmid, hereinafter called 'Lloyd Trustees', or in any two of them. It is the desire and intention of the trustor herein to vest in said 'Lloyd Trustees' above mentioned, or any two of them, the absolute right to manage and control Lloyd Bros. Pharmacists, Inc. until such time as said stock shall be sold and the proceeds of said sale paid to The Atlas National Bank, trustee herein, under the terms of this agreement.

"The said John T. Rouse, William J. Miller and C. J. McDiarmid, 'Lloyd Trustees' as above mentioned, or any two of them, shall have the sole and absolute right to determine when and to whom said stock shall be sold, in whole or in part, the price and terms of such sale or sales and all matters in connection therewith are left to their judgment and discretion, the trustor having full confidence that said judgment and discretion will be exercised for the best interest of the beneficiaries of the estate of said trustor.

"It is my desire and wish that said 'Lloyd Trustees' shall sell said stock of Lloyd Bros., Pharmacists, Inc., if possible within five (5) years after my death.

"* * *

"The said Atlas National Bank hereby agrees to give to said 'Lloyd Trustees' proxies to vote said stock at all times and agrees to sell said stock upon the terms and conditions and when directed by said 'Lloyd Trustees' or any two (2) of them in writing.

"And the said The Atlas National Bank shall incur no liability or responsibility of any kind for the sale or retention of said stock or any part thereof, but shall follow the written direction of said 'Lloyd Trustees' as aforesaid.

"* * *

"When and as said stock, or any part thereof, in Lloyd Bros. Pharmacists, Inc. is sold by the 'Lloyd Trustees' herein named, or their successors, the proceeds of said sale or sales shall be turned over to The Atlas National Bank, trustee herein, and said trustee shall distribute the principal thereof as follows: One-third (1/3) to John Thomas Lloyd, son of John Uri Lloyd, if living; one-third (1/3) to Annie Lloyd Welbourn, daughter of John Uri Lloyd, if living; and the remaining one-third (1/3) shall be held by the trustee herein mentioned and placed among the assets in Trust Number 12 created by the said John Uri Lloyd with The Atlas National Bank, Trustee, on the 28th day of March, 1924, being a trust created by the said John Uri Lloyd for the benefit of his daughter, Dorothy Lloyd Brett, and shall be distributed by said trustee in accordance with the provisions of said trust herein set forth and such modifications and amendments thereof as have heretofore been made or may hereafter be made by the said John Uri Lloyd, trustor."

The three Lloyd Trustees in writing accepted said appointment and agreed to act.

Thereafter said McDiarmid and Rouse (two of said three Lloyd Trustees) after having given an opportunity to the plaintiff John Thomas Lloyd to purchase said stock in September, 1938, contracted to sell said stock to the defendant Penick.

No question is made that said contract was made in good faith and that the price to be paid for said stock was fair and adequate.

Thereafter, on February 4, 1937, plaintiff commenced this action to enjoin said sale, to declare the contract with Penick to be null and void, to declare said trust agreement of June 9, 1933, to be null and void, and to instruct and direct Atlas National Bank relative to its trust duties, and for all proper relief.

In the petition it is alleged that the trust agreement of June 9, 1933, was not executed in accordance with the statutes pertaining to the execution of testamentary instruments, in that the same was not signed and acknowledged as a testamentary instrument by said John Uri Lloyd in the presence of two witnesses. Such claim, however, was abandoned upon the hearing of this cause and it was argued that the proposed sale was null and void on the ground that the legal title to the stock was in The Atlas National Bank, that no power could be given to vote or sell said stock to the Lloyd Trustees; that Prof. Lloyd could not give any proxy not revoked by his death; that there cannot be a right to vote separate from the stock ownership.

At the trial the arguments covered a wide range, namely, a discussion of the rules against perpetuities and restraints on alienation, powers coupled with interests, etc. The claim in the petition with relation to non-compliance with the essentials of a testamentary instrument was abandoned at the hearing.

Under the view which the court takes of said trust instrument of June 9, 1933, it is

entirely unnecessary to consider the learned and ingenious arguments so forcibly presented at the hearing. It should not be overlooked that of the three beneficiaries two have filed pleadings asking that the sale to Penick be carried into effect, and that Atlas National Bank, trustee has filed an answer asking the instructions of the court.

In the opinion of the court it is not necessary to determine whether the Lloyd trustees have the right, in their own names, to transfer the stock standing in the name of the Atlas National Bank, trustee, because the trust agreement expressly provides that Atlas National Bank, trustee, "agrees to sell said stock upon the terms and conditions and when directed by said Lloyd trustees, or any two of them in writing."

In the interpretations of trusts, like wills, the rule is well established that the whole instrument must be considered in order to ascertain the intention of the settlor. 65 Corpus Juris at page 499, and cases cited. This same rule prevails in the interpretation of contracts. **Legler, Admr. v Guaranty Co., 88 Oh St 336; Kelly v Kilburn, 8 Ohio 325, at 327.**

As was said by the court, per Vann, J., in New York Life Insurance & Trust Co. v Hoyt, 161 N. Y. 1, at page 9:

"We do not need in this case to go beyond the language employed by the settlors in order to learn their intention, which must be collected from the whole context and subject matter of the deed, so as to make one entire and consistent construction of the whole."

In Beal's elaborate English work on "Cardinal Rules of Legal Interpretation" (2nd ed.) at page 59, the rule is stated in the language of Ellenborough, C. J. in Barton v Fitzgerald, 15 East 530, at 541, as follows:

"It is a true rule of construction that the sense and meaning of the parties in any particular part of an instrument may be collected ex antecedentibus et consequentibus; every part of it may be brought into action in order to collect from the whole one uniform and consistent sense if that may be done."

Viewing the trust instrument from its four corners, it is clearly apparent that Prof. Lloyd had, in his own language, **"full** confidence"** in the Lloyd Trustees, and that all powers vested in and directions given to them were to be exercised and performed by them, or any two of them. It is likewise positively apparent that he desired that the stock in question be sold within five years after his death, upon such terms and at such price as was the "judgment and discretion" of them, or any two of them.

That the "desire and wish" for such sale within five years after his death is a command or direction is uniformly well established by the adjudications. The rule is that when words of recommendation must be followed to carry out the clear intention of the settlor, such words are regarded as words of command or direction. See authorities collected 49 A.L.R. at page 26.

That the trust agreement in some parts seems to give the Lloyd Trustees power of sale and of voting the stock as their judgment and discretion dictates, although the legal title was vested in Atlas National Bank, trustee, does not destroy the force and effect of the express provision:

"The said Atlas National Bank hereby agrees to give to said Lloyd Trustees proxies to vote said stock at all times and agrees to sell said stock upon the terms and conditions and when directed by said Lloyd Trustees or any two of them in writing."

In our view the trust agreement recognizes that although the Lloyd Trustees are to represent said stock in the conduct of the business of the company and are to negotiate a sale thereof, yet the legal formalities necessary to effect said purposes are to be accomplished by proxies from the Trustee bank, and by assignment, transfer and delivery of stock certificates in event of sale.

As was said by Burket, J., **in Brown v Fowler, 65 Oh St 507,** at 531:

"It is a rule of construction of written instruments that, that which is made certain in one part, cannot be overcome or changed by words in another part, unless such words are of equal or greater certainty."

**Comstock Amusement Co. v Opera Ball Co., 93 Oh St 46,** is an illustration of the rule that a strict construction of one provision of the instrument cannot be resorted to if such construction would render of

no effect another provision of the instrument.

"It is well settled that the invalidity of some of the objects or provisions of a trust, or of part of several trusts, created by the same instrument, will not affect the validity of the remaining objects, provisions or trusts which are separate and independent, but in such case the invalid portions will be rejected and the valid portions permitted to stand." 65 Corpus Juris, page 333, and cases cited.

"In construing trust instruments, the courts will, whenever possible, favor that construction which will uphold the validity of the trust. Hence, where the provisions of the instrument creating the trust are capable of two constructions, the court will adopt that construction which will render the trust legal and operative, rather than the one which will render it void." 65 Corpus Juris, 498, and cases cited. **Bank v Insurance Co., 83 Oh St 309, Syllabus 6. Stewart v Heron, 77 Oh St 130, at 148, per Crew, J.**

Summing up our conclusions and judgment, it follows from the foregoing that an injunction will be denied herein, and that The Atlas National Bank, Trustee, will be ordered and directed, upon application of Lloyd Trustees, or any two of them, to transfer and assign to defendant Penick the 2800 shares of the said capital stock upon the terms and price agreed upon between said Penick and two of the Lloyd Trustees in September, 1936.