[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This is an appeal from a summary judgment entered by the Pickaway County Common Pleas Court, Probate Division, construing the Last Will and Testament of Frances P. Haines, Deceased. David Baker and Bonita Hammond, defendants below and appellants herein, assign the following error for our review:
 "THE TRIAL COURT ERRED IN DENYING DEFENDANTS-APPELLANTS' MOTION FOR SUMMARY JUDGMENT AND IN GRANTNG THE MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF-APPELLEE."[1]
The record reveals the following facts pertinent to this appeal. In 1991, Frances P. Haines executed a Last Will and Testament making numerous specific bequests and providing for the disposition of her residuary estate as follows:
 "All the rest, residue and remainder of my estate, both real and personal, of every kind and description, wheresoever situate which I may own or have the right to dispose of at the time of my decease, I order and direct my Executor hereinafter named to sell and reduce to cash, and to distribute the net proceeds therefrom to Dorothy Larndrum, Dixie Lee Polen, Dorothy N. Franklin, Ercil Cutler and George Baker, equally share and share alike, the same to be theirs absolutely, or to the survivors thereof."[2]
One of the named beneficiaries in this clause, George Baker, died in 1994 leaving two (2) children, David Baker and Bonita Hammond, appellants herein. Ms. Haines passed away herself on November 21, 1997, without leaving any additional testamentary instructions to address the death of the aforesaid residual beneficiary. Her Will was admitted to probate and Dixie Lee Polen, plaintiff below and appellee herein, was duly appointed Executor of the Estate.
On January 11, 1999, Ms. Polen commenced the action below seeking construction of the Will and guidance as to whether the residuary estate should be divided equally among the surviving residual beneficiaries or whether the antilapse statute set forth in R.C. 2107.52(B) would apply so that appellants would step into the place of their deceased father and take the share that would have been distributed to him had he survived.[3] Appellants filed an answer and counterclaim admitting the material allegations in the case and asking that the Will be construed, and the antilapse statute applied, in such a manner that they would share in the portion of the residuary estate that would have passed to their father.
Both sides filed motions for summary judgment asserting that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law. The trial court rendered a decision on October 12, 1999, that granted the Executor's motion and overruled the appellants' motion. The court reasoned that: there was "no ambiguity with respect to the language used in the residuary clause" and that the testator intended only for the named residual beneficiaries to share in "the net proceeds of her estate." If one of those named beneficiaries did not survive, the court continued, "then that person does not exist and the surviving members are to equally divide the net proceeds." The court opined that "[i]f the testator wanted the issue of one of these beneficiaries to take his or her share, [the] testator would have used the appropriate language to reflect. that intention" but no "such language was used." Given this lack of ambiguity, and considering the clearly expressed intent of the testator that only the named beneficiaries were meant to share the residuary estate, the court ruled that the antilapse statute had no application in this instance and that appellants were not entitled to take their father's share of the decedent's estate. Judgment to that effect was entered on October 20, 1999, and this appeal followed.
 I
Before addressing the assignment of error on its merits, we first pause to consider the appropriate standard of review. An appeal from a summary judgment is considered de novo. Broadnaxv. Greene Credit Service (1997), 118 Ohio App.3d 881, 887,694 N.E.2d 167, 171; Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38,41, 654 N.E.2d 1327, 1329; Maust v. Bank One Columbus, N.A.
(1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, 768. That is to say that no deference is afforded the trial court's decision,see Hicks v. Leffler (1997), 119 Ohio App.3d 424, 427,695 N.E.2d 777, 779; Dillon v. Med. Ctr. Hosp. (1993), 98 Ohio App.3d 510,514-515, 648 N.E.2d 1375, 1378; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-412, 599 N.E.2d 786, 788, and an appellate court conducts its own independent review to determine if summary judgment was appropriate. Woods v. Dutta (1997), 119 Ohio App.3d 228,233-234, 695 N.E.2d 18, 21; Phillips v. Rayburn (1996),113 Ohio App.3d 374, 377, 680 N.E.2d 1279, 1281; McGee v. GoodyearAtomic Corp. (1995), 103 Ohio App.3d 236, 241, 659 N.E.2d 317,320. Such relief is appropriate under Civ.R. 56(C) when the movant demonstrates that (1) there is no genuine issue as to any material fact, (2) it is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party; said party being entitled to have the evidence construed most strongly in its favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201, 204; Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199; Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46,47-48. It is the party moving for summary judgment who bears the initial burden of showing that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429,674 N.E.2d 1164, 1170; Dresher v. Burt (1996), 75 Ohio St.3d 280, 293,662 N.E.2d 264, 274; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798, 801.
No factual disputes arose in the cause sub judice. The only questions before the trial court were legal issues, the resolution of which are subject to de novo review on appeal. SeeWilliams v. Swan Super Cleaners, Inc. (Mar. 7, 2000), Franklin App. No. 99AP-583, unreported; Herrell v. Runyon (Dec. 27, 1999), Lawrence App. No. 99CA6, unreported; Hawn v. Pleasant (May 28, 1999), Scioto App. No. 98CA2595, unreported. Further, the interpretation of a Will, or determination of a testator's intent, is likewise subject to de novo review. See Carnahan v.Johnson (1998), 127 Ohio App.3d 195, 199, 711 N.E.2d 1093, 1096;Summers v. Summers (1997), 121 Ohio App.3d 263, 267,699 N.E.2d 958, 961; In re Estate of Davis (1996), 109 Ohio App.3d 181, 183,671 N.E.2d 1302, 1303. Thus, in reviewing the proceedings below and in construing the Last Will and Testament of Frances P. Haines, Deceased, this Court must conduct its own analysis without deferring to the conclusions or reasoning of the trial court. With that in mind, we turn our attention to the merits of the case.
 II
The Last Will and Testament of Frances P. Haines, Deceased, provided that her residuary estate was to be divided amongst Dorothy Landrum, Dixie Lee Polen, Dorothy N. Franklin, Ercil Cutler and George Baker "equally share and share alike, the same to be theirs absolutely or to the survivors" of them. There is no question that Mr. Baker was a "relative" and predeceased the testator. Ordinarily, in such circumstances Ohio's anti-lapse statute would apply and Baker' s children (i.e. appellants) would take his share of the residuary estate. That statute provides, in pertinent part, as follows:
 "Unless a contrary intention is manifested in the will,
if a devise of real property or a bequest of personal property is made to a relative of a testator and the relative . . . dies after that time, leaving issue surviving the testator, those issue shall take by representation the devised or bequeathed property as the devisee or legatee would have done if he had survived the testator." R.C. 2107.52(B) (Emphasis added.)
The decedent was presumed to have known of the existence and the effect of this statute. Martin v. Summers (1995), 101 Ohio App.3d 269,271, 655 N.E.2d 424, 425; also see McCabe v. Fluent
(Feb. 11, 1994), Trumbull App. No. 93-T-4867, unreported; Rettigv. Neisel (Sep. 19, 1979), Stark App. No. CA-511, unreported. Had the decedent wanted to avoid its application, she could have done so by a sufficient expression of intent in her Will. Tootlev. Tootle (1986), 22 Ohio St.3d 244, 490 N.E.2d 878, at paragraph two of the syllabus; also see 1 Merrick-Rippner, Probate Law (1997) 756, § 46.1. The sole issue before us then is whether the decedent manifested such an intent and made it clear that she did not want the antilapse provisions to apply.[4]
Appellees argued below that the decedent did make it clear in her Will that only the specified residual beneficiaries surviving her death would take under the provisions of that instrument. The Probate Court came to the same conclusion finding that there was "no ambiguity" in the Will and that, if the testator wanted the issue of one of her named beneficiaries to share in the residuary estate, she would have used "the appropriate language to reflect that intention." Appellants argue that this was error. They contend, among other things, that the language in the Will is ambiguous and that there is simply no clear statement anywhere in that document that the testator intended to avoid application of the antilapse statute and "divest George Baker's children of the bequest to their father." After a thorough review of Ms. Haines's Last Will and Testament, as well as an exhaustive look at the rather extensive caselaw in this area, we ultimately come to the same conclusion as the trial court albeit for slightly difierent reasons.
Our analysis begins from the standpoint that this case originated as an R.C. 2107.46 action to construe a will. The sole purpose of the court in a will construction case is to ascertain and carry out the intention of the testator. Sandy v.Mouhot (1982), 1 Ohio St.3d 143, 144, 438 N.E.2d 117, 118; Carrv. Stradley (1977), 52 Ohio St.2d 220, 371 N.E.2d 540, at paragraph one of the syllabus; Townsend's Executors v. Townsend
(1874), 25 Ohio St. 477 at paragraph one of the syllabus. We first look to the language of the will itself to determine the testator's intent. When the language of that instrument is clear and unambiguous, such intent can be ascertained and applied from the four (4) corners of the document. See Carnahan v. Johnson
(1998), 127 Ohio App.3d 195, 200, 711 N.E.2d 1093, 1096; Churchv. Morgan (1996), 115 Ohio App.3d 477, 481, 685 N.E.2d 809, 811; also see generally Domo v. McCarthy (1993), 66 Ohio St.3d 312,314, 612 N.E.2d 706, 708. The words used by a testator in a Will must be afforded their usual and ordinary meaning. Findleyv. Conneaut (1945), 145 Ohio St. 480, 62 N.E.2d 318 at paragraph three of the syllabus; Anderson v. Gibson (1927), 116 Ohio St. 684,692-693, 157 N.E. 377, 379; Sommers v. Doersam (1926),115 Ohio St. 139, 152 N.E. 387, at the syllabus. Only when the terms of the will are ambiguous does a court need to engage the rules of construction to interpret the language therein. See Lewis v.Lewis (Jul. 23, 1999), Athens App. No. 98CA17, unreported; Imberv. Orcholski (Aug. 30, 1985), Defiance App. No. 4-84-16, unreported; also see 31 Ohio Jurisprudence 3d (1997) 422, Decedents' Estates, § 459. We thus turn to the language used by the decedent in her Last Will and Testament.
It should be noted at the outset that nothing in the Will clearly delineates what is to happen upon a residual beneficiary' s death. The Will provides no express provision for the lapse of that beneficiary's share back into the residuary estate, nor is there any clear mention that the beneficiary's heirs are to take that share per stirpes. The trial court concluded that the absence of such provision was indicative of the testator's intent that the issue of a deceased beneficiary not share in the residuary estate. We disagree with that particular reasoning.
As mentioned previously, the operation of the antilapse statute can only be avoided through an express manifestation of that intent in the will and the testator is presumed to be aware of that requirement at the time the instrument is executed. It logically follows then that silence on the. part of the testator cannot properly be construed as a manifestation of intent to avoid application of R.C. 2107.52(B). That intent must be clearly and affirmatively set forth in the will. See Larwill'sExecutors v. Ewing (1905), 73 Ohio St. 177, 182, 76 N.E. 503,504-505 (the antilapse statute is not to be averted except by language which clearly makes or requires a disposition different from that which its terms contemplate). Given that Ms. Haines made no express provision for avoidance of the antilapse statute, her silence, ceteris paribus, can only be construed as intending for the statute to apply and for appellants to take their father's share of the residuary estate.
The testator's silence, however, was not the only basis for the decision below., Both the trial court and appellees attached particular significance to the testator's use of the phrase "or to the survivors thereof" in the residuary clause. (Emphasis added.) They contend that the term "survivors" carries a distinct legal connotation in this context and means those who outlive others in an enumerated group of beneficiaries. It is essentially argued that the testator's use of that phrase manifested an intent to avoid operation of R.C. 2107.52(B) and to have the residuary estate vest only in those named beneficiaries who survived her death. We agree.
As support for their position, appellees and the trial court relied on the case of Hamilton v. Pettifor (1955), 101 Ohio App. 213,138 N.E.2d 447, afff'd 165 Ohio St. 361, 135 N.E.2d 264, wherein a residuary clause leaving property to the testator's "three (3) children, Carl, Emma and Muriel Pettifor, or their survivors, absolutely and in fee simple, equally, share and share alike" was interpreted to restrict participation in the residual estate to the survivors of the named class beneficiaries and that the testator did not intend for the issue of a deceased beneficiary to participate therein. We note that further support for this proposition can be found in at least one prominent treatise, See 4 Page on Wills (1901) 467-468, § 34.32 (the word "survivors" when used as a class is limited to the individuals of such a class and does not include their children), as well as several other noteworthy cases. See e.g. Sinton v.Boyd (1869), 19 Ohio St. 30 at paragraph two of the syllabus (residual provision naming the testator's "children" or "the survivors of them" held to mean that no interest vested in a deceased child and that the grandchild of the testator was not entitled to share in the estate); Corry v. Central MethodistChurch of Springfield (App. 1950), 61 Ohio Law Abs. 295, 297, 104 N.E.2d 73, 74 (bequest to two persons or the survivor of them vests in such person or persons as are alive at the time of the testator's death). These materials are not directly dispositive, however, because they deal only with common law will construction cases and do not analyze the term "survivors" in the context of R.C. 2107.52(B). The question then becomes whether the phrase "or the survivors thereof" was a sufficient manifestation of intent on the part of the testator to avoid operation of the antilapse statute.[5]
This appears to be an issue of first impression in this state. Neither side has cited any Ohio case which has dealt with this particular issue and we have found none in our own research. Other jurisdictions have addressed this question with varying results. Some states have concluded that this sort of language is insufficient to defeat pertinent antilapse provisions. Seee.g. Early v. Bowen (N.C.App. 1994), 447 S.E.2d 167, 162 (bequest to two (2) brothers "to be shared equally between them or to the survivor"); In re Estate of Allmond (Wa.App. 1974),520 P.2d 1388, 1390-1391 (bequest to a sister-in-law and her son "share and share alike, or to the survivor of them"). Other states, however, have concluded that such language manifests an intent on the part of the testator to avoid such provisions. See e.g.re Estate of Farris (Okla.App. 1993), 865 P.2d 1275, 1278 (bequest to brothers and sisters "or to survivors of them") ; In re Estateof Burruss (Mich.App. 1986), 394 N.W.2d 466, 468 (bequest to daughters "or to the survivors of them"). In re Robinson's Will (Sur.Ct. 1963), 236 N.Y.S.2d 293, 295 (bequest to brothers and sisters "or to the survivor or survivors of them")
Having reviewed the reasoning in each of these cases, and after considering the aforementioned principles of will construction as well as the specific wording of the instrument before us, we ultimately come to the same conclusion as the latter group of these jurisdictions and hold that the phrase "or the survivors thereof" was sufficient to defeat application of R.C. 2107.52(B). While it is true that language used by a testator in a will is to be afforded its usual and ordinary meaning, see Findley, supra at paragraph three of the syllabus;Sommers, supra at the syllabus, it is equally true that technical words used in a will must be interpreted according to their strict technical meaning unless it appears that the testator used them in some other sense. See In re Will of Stevenson (Jan. 10. 1986), Ross App. No. 1252, unreported; also see 31 Ohio Jurisprudence 3d, supra at 444, § 484; 1 Merrick-Rippner, supra
at 723, § 43.19. The authorities cited previously make it clear that a phrase such as "to the survivors thereof," or similar language, when used in reference to a group of beneficiaries, has long been interpreted to mean the surviving members of the group as opposed to the children of a deceased beneficiary. SeeSinton, supra; Hamilton, supra; Corry, supra.[6] There is no indication in the will before us that Ms. Haines intended for this language to have any other meaning than the strict technical one which has been afforded to it over so many years. That being said, we construe the term "or to the survivors thereof" in her will as referring to the surviving members of the beneficiary group named in the residuary clause and as manifesting an intent to avoid application of R.C. 2107.52(B).
Our conclusion is buttressed by the fact that there is nothing in the law which requires a rote recitation of certain talismanic language to avoid application of the antilapse statute. Indeed, varying degrees of "survivorship" language have long been held sufficient to indicate an intent to avoid the statute, see e.g. Rumberg v. Rumberg (Dec. 16, 1998), Mahoning App. No. 96CA165, unreported; also see Cowgill v. Faulconer (C.P. 1978), 57 Ohio Misc. 6, 9, 385 N.E.2d 327, 330; Shalkhauser v.Beach (P.C. 1968), 14 Ohio Misc. 1, 5, 233 N.E.2d 527, 530, as has other language. See Day v. Brooks (P.C. 1967), 10 Ohio Misc. 273,283-284, 224 N.E.2d 557, 566 (those living at the time of my decease); also see 4 Page on Wills, supra at 544, § 35.18 (beneficiaries "who may then be living"). The important thing is that the testator clearly manifest an intent that R.C. 2107.52(B) is not to apply. That objective was accomplished here when the decedent, represented by able and experienced counsel, wrote her will in such a manner as to utilize a phrase with a very particular and well established meaning. That meaning (i.e. that only the surviving members of the group of beneficiaries were to share in the residuary estate) makes it clear that the antilapse statute was not to apply. Consequently, the children of the deceased beneficiary are not entitled to take their father's share of the residual estate.
Appellants make a number of counterarguments in opposition to this result. First, they cite us to that portion of the residuary clause which bequeaths the proportionate shares of the estate to the named beneficiaries "to be theirs absolutely."
(Emphasis added.) Appellants point out that "absolute" is generally defined to mean "final; without any condition or incumbrance," see Black's Law Dictionary (5th Ed. 1979) 9, that "absolutely" means "wholly; without qualification," Id. and that an "absolute legacy" is "[o]ne given without condition and intended to vest immediately." Id. at 802. Appellants argue that the testator's use of the term "absolute" negates any inference that she meant to impose a survivorship requirement on the named beneficiaries and that, instead, the bequests were meant to be "absolute and not to lapse." Appellants conclude that, by focusing on the survivorship language rather than the term "absolutely," the trial court failed to give effect to the entire will. We are not persuaded.
The primary problem with appellants' argument is that we find no support for it other than the dictionary entries set forth above. Appellants cite no authority in which such terms have been construed in that manner and we have found none in our own research. To the contrary, we have discovered several cases in which the term was used in a will but was then virtually ignored by the courts. See e.g. Hamilton, supra (bequest to three (3) children "or their survivors, absolutely"); also see Inre Robinson's Will, supra. We agree with appellants, in the abstract, that a will should be construed so as to give effect to the entire instrument and that none of the language used therein should be disregarded. Nevertheless, the word "survivors" in reference to residual beneficiaries has a long and well established meaning which should not be "negated" (as appellants urge) without some clear authority to that effect or some express indication by the testator that the term "absolutely" was meant as anything more than mere surplusage in the document.
Appellants also cite to Item XIX(D) of the Will which sets forth the general powers given to the executor of the estate and allows inter alia for any distributions of personal property to minor children to be made directly to those children or to the adult with whom such child is living. Affidavits filed below attest that "[n]one of the beneficiaries named in the Will of Frances P. Haines was a minor at the time the Will was executed." Thus, appellants conclude, the testator must have intended or contemplated that the children of a predeceased residual beneficiary would step up and take their parent's share of the estate or she would not have included this language in the instrument. We are not persuaded.
First, had the decedent truly intended for the children of a deceased beneficiary to take their parent's share of the residual estate, she would surely have made that point clear long before the concluding paragraphs of her Will. Second, as appellees argue in their brief, this portion of the Will was attempting to delineate the powers afforded to the fiduciary. It would not be unexpected for the language therein to contain boilerplate that may, or may not, pertain to the situation at hand. Again, as with our analysis of the term "absolutely" above, a more definitive and concrete showing of the testator' s intent is required before this Court will allow the well established meaning of the survivorship language in the residuary clause to be negated.
Finally, appellants argue to the effect that a construction of the Will which defeats their claim to their deceased father's share of the residuary estate violates the policy considerations behind the antilapse statute. We disagree. The purpose for the statute is well known and has been summarized by the Ohio Supreme Court as follows:
 "The rule as to the lapsing of devises and legacies that prevailed before the statute, defeated, in most cases, the intention of the testator. He generally made his will with reference to the objects of his bounty as they existed at the time and as though his will took effect at the date of its execution — not apprehending that a lapse would occur in case any of them should die before himself, unless some express disposition should be made in anticipation of such event. The statute was passed to remedy such disappointments, and should receive a liberal construction, so as to advance the remedy and suppress the mischief." See Dollar Savings Trust Co. of Youngstown v. Turner (1988) 39 Ohio St.3d 182, 184-185, 529 N.E.2d 1261, 1264, Wolley v. Paxson (1889), 46 Ohio St. 307, 314, 24 N.E. 599, 600.
The antilapse statute is essentially premised on the idea that a testator does not intend to disinherit grandchildren. It presumes that, unless otherwise stated in the Will, a parent leaving property to a child intends for the issue of that child to share in the property should the child predecease its parent. This was not what happened in the cause sub judice. Appellants are not "the objects" of the testator's "bounty." They are a great-niece and great-nephew. Indeed, it would appear from the record that none of the named residual beneficiaries are lineal descendants of the testator. Therefore, the lapse of the bequest to George Baker back into the residuary estate to be shared by the surviving beneficiaries violates neither the letter nor the purpose behind R.C. 2107.52(B).[7]
For these reasons, appellants' assignment of error is not well taken and is overruled. The judgment of the trial court is hereby affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed that appellees recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court, Probate Division, carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment Only*
Grey, J.: Concurs in Judgment Opinion
* Lawrence Grey, retired, sitting by assignment of the Ohio Supreme Court in the Fourth District.
 _______________________ Peter B. Able Judge
[1] Appellants' brief does not contain a separate "statement of the assignments of error" as required by App.R. 16(A)(3), see Whiteside, Ohio Appellate Practice (1999 Ed.) 93, § T5.13, and therefore we have taken this from their "table of contents." The table of contents is also somewhat confusing because it denotes a first assignment of error (thus suggesting subsequent assignments) even though this appears to be the only error posited for cur review. Finally, we would point out that the brief incorrectly contains "propositions of law" which are used in Supreme Court practice, see S.Ct.Prac.R. VI(A)(4), rather than "issues presented for review" as are used in intermediate level appellate practice. See App.R.16(A)(4).
[2] The relationships of the residual beneficiaries to the testator is not entirely clear from the record but it would appear that Ms. Landrum was her sister and that the other named beneficiaries were nieces and nephews. No mention is made in the record of Ms. Haines having any surviving spouse or children.
[3] Appellee indicated in the Complaint that she interpreted the Will in such a manner that "the anti-lapse statute [was] not applicable and there [should be] a per capita
distribution . . . to the surviving members of the class."
[4] A number of extraneous issues have been raised both below and on appeal that have little to do with the ultimate resolution of the cause sub judice. First, the parties spend considerable time discussing whether the testamentary disposition at issue herein is a bequest per capita or per stirpes. This is largely irrelevant because those terms generally relate to the mode of distribution. They refer not to those who shall take but to the manner in which those who shall take come within the class entitled to take. See 32 Ohio Jurisprudence 3d (1997) 147, Decedents' Estates, § 635. A distribution per capita means that each of those named beneficiaries take an amount equal to that taken by the others. See Blacks Law Dictionary (5th Ed. 1979) 1022. Obviously, in this case, the testator's use of the terms "equally" and "share and share alike" denotes a per capita
distribution, among the named beneficiaries. See Mooney v. Purpus
(1904), 70 Ohio St. 57, 66, 70 N.E. 894, 896; McKelvey v.McKelvey (1885), 43 Ohio St. 213, 1 N.E. 594, at the syllabus;Huston v. Crook (1882), 38 Ohio St. 328, 330. The fact that the named beneficiaries take per capita, however, does not answer the question of whether appellants are entitled to take the share that would have been taken by their deceased father. Likewise, while the plain language of R.C. 2107.52(B) allows appellants to take their father's share by representation, or per stirpes, that fact has no bearing on the issue of whether they are entitled to take in the first place. Another issue to which each side has devoted time and attention is whether the decedent's testamentary disposition was to a "class" or simply to separate individuals. At common law, bequests to named individuals lapsed into intestacy when the individual predeceased the testator whereas the intervening death of a class beneficiary caused a proportionate accretion to the shares of the surviving class members. See generally Annotation (1982), 13 A.L.R.4th 978, 983 at fn. 3; 80 American Jurisprudence 2d (1975), 482-483, Wills, § 1409. Such terminology makes little difference here though because the antilapse statute changes the common law with respect to both class gifts and bequests to named individuals and allows for the children of the deceased beneficiary to take regardless of how the initial beneficiaries are categorized. See generally
32 Ohio Jurisprudence 3d, supra at 260-261, § 788; also see
Annotation (1973), 54 A.L.R.3d 280. 299. Thus, the issue here is not whether the decedent made a per capita or per stirpes bequest to either a class of beneficiaries or named individuals; rather the issue is whether the antilapse statute applies or whether the decedent made it clear that she did not intend for it to apply.
[5] We acknowledge, as did the trial court, the inherent difficulty of construing a testator's intent from the language used in a will. Every will construction case is sui generis.See Davidson v. Miners and Mechanics Sav. Trust Co. (1935),129 Ohio St. 418, 423, 195 N.E. 845, 847. Subtle nuances and differences in the language of every will means that adjudicated cases will provide little precedential value. See Anderson v.Gibson (1927), 116 Ohio St. 684, 688-689, 157 N.E. 377, 378; Moonv. Steward (1913), 87 Ohio St. 349, 101 N.E. 344, at paragraph one of the syllabus; Brasher v. Marsh (1864), 15 Ohio St. 103,109. We would therefore point out that the cases cited bothsupra and infra in this opinion are used only for general guidance and are not viewed by us as controlling authority.
[6] The same interpretation has been given to such language by other authorities and in other jurisdictions as well. See 4 Page on Wills (1901), 467-468, § 34.32; also see e.g. In reEstate of Kirchwehm (Ill.App. 1991), 570 N.E.2d 851, 854; Muzzallv. Lanford (Tenn.App. 1989), 776 S.W.2d 122, 123-124; Mitchell v.Lowry (N.C.App. 1988), 368 S.E.2d 7, 9-11; Porter v. Estate ofMyrick (Fla.App. 1988), 522 So.2d 99, 100; Saia v. Sain (Md.App. 1987), 533 A.2d 1336, 1338-1339.
[7] Our decision in this case should not be misconstrued as holding that the statute applies to any lesser degree with respect to nieces and nephews than to children and grandchildren. To the contrary, had the testator not provided for the bequest to go to the "survivors" of the named beneficiaries, we would have readily applied the antilapse statute to uphold appellants' claims. The issue here, as in any will construction case, is to determine the teststor's intent. Because the named beneficiaries were a sister and several nieces and nephews, rather than all her living family members sharing equally, it is clear that the testator meant to provide for certain people individually rather than for her relatives as a whole. This leads us to believe that, had she. wanted the children of those named individuals to share in the estate as well, she would have specified that intent in the Will. Given that she did not, and considering that she used the term "survivors" in the residuary clause, we conclude that she meant for only the survivors of those relatives named in the clause to share in her estate.