JOURNAL ENTRY and OPINION
{¶ 1} When a surviving spouse is the beneficiary of a will that makes a disposition of the residual estate to an inter vivos trust and the surviving spouse is entitled to an interest in the trust, the surviving spouse can choose to elect under the will, but in doing so is deemed to have predeceased the testator for purposes of the trust unless the trust specifically provides otherwise. Plaintiff Muriel Gottesman (we shall refer to her as "Gottesman") is the beneficiary of both a will and inter vivos trust established by her late husband, Robert Gottesman. She asked the court to make a declaration that certain language in the trust instrument incorporated the "specifically provides otherwise" language necessary to permit her to elect to take under the will yet still be entitled to remain as the income and principal beneficiary of the trust, without being considered to have predeceased Robert. The court held that the requisite intent had not been shown.
 {¶ 2} Summary judgment may only be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Civ.R. 56(C). The material facts are undisputed and the interpretation of a written instrument like a trust is matter of law for the court which we undertake independently from the court's decision. SeeIn re Estate of Davis (1996), 109 Ohio App.3d 181, 183.
 {¶ 3} Robert settled the trust in 1980 and named Gottesman as the sole recipient of the trust principal and income. At the time of his death, the trust was to split into two shares: a family share and a marital share. The family share was to be funded with the amount of Robert's federal unified credit remaining at the time of his death. The remainder of the estate would fund the marital portion. Gottesman is entitled to receive all the income from the marital trust as well as any other amounts the trustee deems necessary or appropriate for her health, support, maintenance or comfort at her accustomed standard of living. Gottesman is also the primary beneficiary of the will.
 {¶ 4} It has long been the law that a spouse who is a beneficiary of an inter vivos trust cannot elect to take against the estate and still be a beneficiary of the trust:
 {¶ 5} "A valid voluntary trust in praesenti, formally executed by a husband and existing at the time of his death, in which he reserved to himself the income therefrom during life, coupled with an absolute power to revoke the trust in whole or in part, as well as the right to modify the terms of the settlement and to control investments, bars the wife, upon the death of the settlor, from a claimed right to a distributive share of the property in the trust upon her election to take under the statutes of descent and distribution." Smyth v. Cleveland Trust Co. (1961), 172 Ohio St. 489, paragraph two of the syllabus. This principle was reaffirmed in the syllabus to Dumas v. Estate of Dumas (1994), 68 Ohio St.3d 405:
 {¶ 6} "A valid, nontestamentary trust executed by a settlor and in existence at the time of his or her death bars the settlor's spouse from claiming a distributive share in the trust assets under the statutes of descent and distribution, even though the settlor is the trustee, derives all income from the trust, and reserves the rights to revoke or amend the trust and to withdraw and deposit assets."[1]
 {¶ 7} The exception to the above rule is set forth in R.C.2106.01(D) which provides in part:
 {¶ 8} "If there is a disposition by a will to an inter vivos trust that was created by the testator, if under the terms of the trust the surviving spouse is entitled to any interest in the trust or is granted any power or nomination with respect to the trust, and if the surviving spouse makes an election to take under section 2105.06 of the Revised Code, then, unless the trust instrument provides otherwise, the surviving spouse is deemed for purposes of the trust to have predeceased the testator, and there shall be an acceleration of remainder or other interests in all property bequeathed or devised to the trust by the will, in all property held by the trustee at the time of the death of the decedent, and in all property that comes into the hands of the trustee by reason of the death of the decedent." (Emphasis added.)
 {¶ 9} This statute went into effect in 1988, eight years after Robert settled the trust. The court noted Robert had amended the trust agreement three times after the effective date of the statute without incorporating those provisions into the statute. Finding that Robert was charged with a knowledge of the law at the time he amended the trust, the court concluded that Robert could not have intended to incorporate that which he conspicuously failed to mention.
 {¶ 10} The court also rejected Gottesman's argument that language in the trust providing for survivorship pursuant to R.C. 2105.21 is broad enough to encompass R.C. 2106.01(D). R.C. 2105.21 states that "[w]hen the surviving spouse or other heir at law, legatee or devisee dies within thirty days after the death of the decedent, the estate of such first decedent shall pass and descend as though he had survived such surviving spouse, or other heir at law."
 {¶ 11} Section 14 of the trust states:
 {¶ 12} "Should any person who would take under this instrument, but for this provision, fail to survive me by more than ninety (90) days, such person or persons shall be deemed to have predeceased me for the purposes of construing the terms of this instrument, except that this provision shall not apply to my wife, Muriel. If my wife survives me, the allocations and distributions of property to her or for her benefit shall not lapse on account of operation of Ohio Revised Code § 2105.21 nor on account of the operation of any other law or rule of law treating my wife who survives me as though she had predeceased me. If there is no evidence of the order in which the deaths of my said wife and me occurred, my said wife shall be deemed to have survived me for all the purposes of this instrument." (Emphasis added.)
 {¶ 13} The court rejected this argument because Section 14 of the trust instrument had been titled "Survivorship Requirement" and specifically referred to R.C. 2105.21 — the court concluded that it would only apply the language of Section 14 to survivorship under R.C.2105.21 and not by inference to R.C. 2106.01(D). The court went on to state, "[n]owhere does the Clause address Gottesman's desire that Muriel be permitted to benefit from the Trust if she exercises her elective right. The Clause provides for the contingency of Muriel's early death, but is silent on Muriel's right to elect against the Will and the consequences thereof on her continuing interest in Gottesman's Trust."
 {¶ 14} Although not expressly stated in the court's opinion, it is apparent that the court believed that the failure to make specific mention of R.C. 2106.01(D) meant that Robert did not consider it when executing the trust. This conclusion would flow from precedent that says a court should determine the intent of the settlor in light of the law existing at the time of the creation of the trust since an inter vivos trust speaks from the date of its creation — not the date upon which the assets are distributed. See First Natl. Bank v. Tenney (1956),165 Ohio St. 513, paragraph one of the syllabus. R.C. 2106.01(D) did not exist at the time Robert settled the trust, so he could not have intended that anything he said in the trust would apply to a non-existent statute. Moreover, Robert's failure to specifically incorporate the statute after it went into effect necessarily showed his intent not to incorporate it all. The settlor is presumed to know the law, its judicial interpretation, and the effect the law and its interpretation would have on his estate. See Flynn v. Bredbeck (1946), 147 Ohio St. 49, 54. Smyth
was the law at the time Robert settled the trust, and Robert took no steps to ensure that Gottesman was exempt from its application. Smyth was affirmed in 1994 by Dumas, and Robert still did not take steps to incorporate that decision into his trust, even though he amended the trust after Dumas had been released.
 {¶ 15} Everything the court said about the state of the law at the time Robert settled the trust is true, yet beside the point. We only look to the intent of the settlor in the event the words of the trust instrument are ambiguous. "Generally, when the language of the instrument is not ambiguous, intent can be ascertained from the express terms of the trust itself." Domo v. McCarthy (1993), 66 Ohio St.3d 312, 314. The express language of the instrument provides the court with the indicators of the grantor's intentions. Casey v. Gallagher (1967), 11 Ohio St.2d 42. The language of Section 14 incorporating R.C. 2105.21 and "any other law or rule of law treating my wife as though she had predeceased me" were sufficient to encompass R.C. 2106.01(D), even though it had not been adopted at the time Robert settled the trust.
 {¶ 16} The wisdom of confining an initial review of intent to the express terms of the trust is shown by the court's analysis here. The court placed heavy emphasis on Robert's failure to amend Section 14 to incorporate R.C. 2106.01(D) even though that statute had been adopted after he settled the trust and even though he twice amended the trust after the statute had been adopted. But it is just as likely that Robert knew the language of Section 14 was sufficient in any event to incorporate R.C. 2106.01(D) or any other subsequent law or decision to that effect, so any amendment of the trust would have been unnecessary and ultimately redundant. In other words, Robert's failure to amend the trust after the adoption of R.C. 2106.01(D) could be considered proof that he knew the law existed and intended the trust to remain as it was.
 {¶ 17} Moreover, even were we to get into questions of intent, there can be no doubt on the record before us that Robert would have intended that Gottesman receive as much money from his estate as possible. There is nothing in the record to indicate any animus between the spouses. The trust terms are particularly generous to Gottesman, and it is impressive that none of the heirs to the family trust — those who would benefit if Gottesman was not able to elect against the will — has voiced any objection to her application. We think this speaks more to Robert's intent than his failure to amend the trust instrument to include that which was not needed.
 {¶ 18} We conclude that were Gottesman to elect to take under the will and be considered "predeceased" by virtue of R.C. 2106.01(D), the language contained in Section 14 of the trust would nonetheless not make her predeceased in a way that would defeat her right to participate as a beneficiary of the marital trust. The assigned error is sustained.
Reversed and judgment entered for appellant.
This cause is reversed and judgment entered for appellant for proceedings consistent with this opinion.
It is, therefore, ordered that said appellant recover of said appellees her costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, J., CONCURS.
 JAMES J. SWEENEY, J., DISSENTS WITH SEPARATE OPINION.
[1] The rule set forth in Symth and Dumas has been criticized as permitting a form of spousal disinheritance. See Note, Dumas v. Estate ofDumas: the Ohio Supreme Court's Continued Endorsement of Spousal Disinheritance (1994), 25 U. Tol. L. Rev. 847. Because Ohio is an elective-share state, the surviving spouse is limited to a share of the decedent's probate estate. As the law now stands, it does not protect a surviving spouse when the deceased spouse makes nonprobate transfers of property to others, retains complete control and use of the property for life, and even when the transfer may be accomplished to defeat the elective-share rights of the surviving spouse. The only possible bar to this would be proof that the transfer into nonprobate assets had been done with a purpose to defraud.